HON. RONALD B. LEIGHTON

07-CV-05296-ORD

FILED ___ LODGED
___ RECEIVED

JUN 2 0 2008

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COLUMBIA RIVERKEEPER,            )
                                 )   No. 3:07-CV-05296-RBL
    Plaintiff,                   )
                                 )   CONSENT DECREE
    v.                           )
                                 )
DANNI S. WILLIS; W & A           )
ENTERPRISES, INC.; WRAP          )
UNLIMITED, INC.; and WILDWOOD    )
ENTERPRISES,                     )
                                 )
    Defendants.                  )
_____  )

WHEREAS, Plaintiff Columbia Riverkeeper filed a Complaint against Defendants Danni S. Willis, W & A Enterprises, Inc., Wrap Unlimited, Inc. and Wildwood Enterprises on June 14, 2007, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from Defendants' facility located in Longview, Washington, seeking declaratory and injunctive relief, civil penalties and attorneys fees and costs;

WHEREAS, Defendants deny Plaintiff's claims and any liability for the alleged violations; and

CONSENT DECREE - 1
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

WHEREAS, counsel for the parties to this action have engaged in discussions relating to the potential settlement of this litigation, which discussions have included an assessment of the facts surrounding the alleged violations; and

WHEREAS, Defendants have undertaken, and are implementing, measures to further ensure compliance with the Clean Water Act at the facility and to address the issues raised in the Complaint; and

WHEREAS, Plaintiff and Defendants agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action; and

WHEREAS, Plaintiff and Defendants, by their authorized counsel and without trial or final adjudication of the issues of fact or law, with respect to Plaintiff's claims or allegations, consent to the entry of this Consent Decree in order to avoid the risks of litigation and to resolve the controversy between them.

NOW THEREFORE, without trial of any issue of fact or law, and without admission by the Defendants of the facts or violations alleged in the Complaint, and upon consent of the parties, and upon consideration of the mutual promises herein contained, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. All claims alleged in the Complaint against Defendants Danni S. Willis, W & A Enterprises, Inc. and Wildwood Enterprises are hereby dismissed with prejudice.

3. The undersigned representatives for Plaintiff Columbia Riverkeeper and Defendant Wrap Unlimited, Inc. ("Wrap") each certify that she or he is fully authorized by the party or parties whom she or he represents to enter into the terms and conditions of this Consent

CONSENT DECREE - 2
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Decree and to legally bind the party or parties and their successors in interest to it.

4. This Consent Decree shall apply to, and be binding solely upon, Defendant Wrap and Plaintiff Columbia Riverkeeper.

5. This Consent Decree shall apply to Wrap's septic system cleanout, septage handling, and portable toilet leasing operations and/or oversight of its facility located at or about 1110 Columbia Boulevard, Longview, WA 98632 (the "Facility").

6. This Consent Decree constitutes a full and complete settlement of the claims alleged in the Complaint in this case and all other claims known and unknown existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations at the Facility identified in paragraph 5 of this Consent Decree.

7. This Consent Decree shall not constitute evidence in any proceeding, an admission or adjudication with respect to any allegation of the Complaint, any fact or conclusion of law with respect to any matter alleged in or arising out of the Complaint, or the admissions or evidence of any wrongdoing or misconduct on the part of the Defendants or their successor.

8. In full and complete satisfaction of the claims covered by the Complaint filed in this case and all other claims covered by this Consent Decree, as described in Paragraph 6, Defendant Wrap agrees to abide by and be subject to the following terms and conditions:

    a. Within thirty days of the entry of this Consent Decree, Defendant Wrap Unlimited, Inc. ("Wrap") shall apply for coverage under the State of Washington's Industrial Stormwater General Permit (the "Permit") to authorize stormwater discharges from Wrap's operations at the Facility, and Wrap shall thereafter use its best efforts to obtain Permit coverage as soon as possible;

CONSENT DECREE - 3
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

b.   Within thirty days of the entry of this Consent Decree, Defendant Wrap shall fully prepare and implement a stormwater pollution prevention plan for the Facility that meets the requirements of Condition S9 of the Permit and shall forward a copy of this document to Plaintiff;

c.   After Defendant Wrap obtains coverage under the Permit, Wrap shall comply fully with all of the terms and conditions of its Permit and any successor, modified or replacement permit that authorizes discharges of stormwater and other pollutants from the Facility;

d.   After the entry of this Consent Decree or after Defendant Wrap obtains coverage under the Permit, whichever is later, Wrap shall, for four consecutive calendar quarters, irrespective of the sampling frequency required by the Permit, use its best efforts to collect and analyze two samples each quarter of stormwater discharges from the Facility in accordance with the stormwater sampling protocol of the Permit;

e.   If, after the entry of this Consent Decree, any four of the first eight stormwater samples collected and analyzed exceed a benchmark or are outside of a benchmark range established by the Permit for a particular parameter, Defendant Wrap shall retain a stormwater consultant to evaluate the source of the stormwater contamination and provide written recommendations, a copy of which shall be forwarded to Plaintiff, for additional best management practices to bring stormwater discharges at the Facility at or below benchmark levels or within a benchmark ranges, Defendant Wrap shall implement the reasonable recommendations of the consultant and shall provide Plaintiff written notification of this implementation;

CONSENT DECREE - 4
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

f.  Within sixty days after the entry of this Consent Decree, Defendant Wrap shall construct a berm around the portable toilet cleaning operations at the Facility to prevent the processed wastewater from draining into the stormwater collection system;

g.  Within sixty days after the entry of this Consent Decree, Defendant Wrap shall coat the metal roof of the building at the Facility to minimize the potential for leaching of zinc into the stormwater runoff. If weather conditions prohibit this from occurring within said sixty days, Defendant shall coat the metal roof as soon thereafter as weather conditions permit;

h.  Defendant Wrap shall, for a period of three years beginning on the date that this Consent Decree is entered by the Court, forward copies to Plaintiff of all written or electronic communications between Defendant Wrap and the Washington Department of Ecology concerning Wrap's compliance with the Permit and the Clean Water Act, including but not limited to Discharge Monitoring Reports, Level One, Two, or Three response reports or similar adaptive management reports under a successor permit, correspondence, and inspection reports. These copies shall be forwarded to Plaintiff within seven (7) days of submittal or receipt of such communications to or from Ecology;

9.  Not later than thirty days after the entry of this Consent Decree, Defendant Wrap shall make a payment in the amount of $12,500 (TWELVE THOUSAND FIVE HUNDRED DOLLARS) to the Friends of Living Oregon Waters for the Columbia River Water Quality Monitoring Project that is described in Attachment A to this Consent Decree. Such payment shall be made by check payable and mailed to Friends of Living Oregon Waters, P.O. Box 2478, Grants Pass, Oregon 97528, and shall bear the notation "Columbia Riverkeeper v. Willis et al., Clean Water Act Settlement," with a copy provided to Plaintiff.

CONSENT DECREE - 5
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

10. Not later than thirty days after the entry of this Consent Decree, Defendant Wrap shall pay Plaintiff's reasonable attorney and expert fees and costs in the amount of $9,000 (NINE THOUSAND DOLLARS) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard A. Smith, in full and complete satisfaction of any claims Plaintiff may have under the Clean Water Act for fees and costs.

11. The Court shall retain jurisdiction over this matter and allow this case to be reopened without filing fee for the purpose of enabling the parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree until termination of the Consent Decree per paragraph 13. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties shall first attempt to informally resolve the dispute through meetings between the parties by serving written notice of request for resolution to the parties and their counsel of record. If no resolution is reached within thirty (30) days from the date that the notice of dispute is served, the parties may resolve the dispute by filing motions with the court.

12. The parties recognize that no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA pursuant to 33 U.S.C. § 1365(c)(3). Therefore, upon the signing of this Consent Decree by the parties, Plaintiff shall serve copies of it upon the Administration of the U.S. EPA and the Attorney General.

13. This Consent Decree shall take effect on the date it is entered by the Court. This Consent Decree shall terminate sixty (60) days following completion of all of Defendant Wrap's obligations under paragraphs 8(a), 8(b), 8(d), 8(e), 8(f), 8(g), 8(h), 9 and 10, except that, should

CONSENT DECREE - 6
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Defendant Wrap lawfully terminate or transfer its Permit to an unaffiliated third party, this Consent Decree shall terminate sixty (60) days following completion of all of Defendants' obligations under paragraphs 8(a), 8(b), 8(f), 8(g), 9 and 10 or sixty (60) days following the lawful termination or transfer of the Permit, whichever is later. Should this Consent Decree terminate due to the Defendant's lawful transfer of the NPDES Permit to an unaffiliated third party, Defendant shall provide a copy of this Consent Decree to such unaffiliated third party. This requirement shall have no effect on the termination of the Consent Decree, and is intended only to provide the transferee of the NPDES Permit notice of these proceedings.

14. This Consent Decree may be modified only upon the written consent of the parties and the approval of the Court.

15. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

16. Notifications or copies required by this Consent Decree to be made to Plaintiff shall be mailed to Columbia Riverkeeper, 724 Oak Street, Hood River, OR 97031. Notifications required by this Consent Decree to be made to Defendants shall be mailed to Wrap Unlimited, Attn. Danni S. Willis, 1110 Columbia Boulevard, Longview, WA 98632.

Dated and entered this 20th day of June, 2008

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

CONSENT DECREE - 7
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  COLUMBIA RIVERKEEPER
2  Signature: _____
3
4  Title: Staff Attorney
5  Dated: 3/17/08
6
7  WRAP UNLIMITED, INC.
8  Signature: _____
9
10 Title: President
11 Dated: 4-13-08

CONSENT DECREE - 8
No. 3:07-CV-05296-RBL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Case 3:07-cv-05296-RBL   Document 37   Filed 06/20/08   Page 9 of 10
Case 3:07-cv-05296-RBL   Document 34-2   Filed 04/16/2008   Page 9 of 10

# Friends of Living Oregon Waters (FLOW)

P.O. Box 2478
Grants Pass, OR 97528
541-251-FLOW
Cell: (503) 890-2441
www.oregonwaters.org

March 6, 2008

To Whom It May Concern:

This letter is to inform you that Friends of Living Oregon Waters ("FLOW") has read the settlement agreement in the Columbia Riverkeeper vs. Danni S. Willis et al matter, and agrees to abide by its terms. FLOW is a 501(c)(3) non-profit corporation. FLOW commits to spending any monies it receives under the proposed judgment for the purposes specified in the project description below. FLOW will not use any of the money for political lobbying, and after the funding is spent, FLOW will write a letter to the Court, the United States, and to the parties providing a summary of the project outcomes.

### Friends of Living Oregon Waters (FLOW) 2008 Columbia River Water Quality Monitoring Project

**The Friends of Living Oregon Waters (FLOW)** 2008 toxics monitoring project will be focus on the middle and lower Columbia River and will be aimed at helping fill important data gaps that have been identified as a part of the United States Environmental Protection Agency's (EPA) toxics reduction program for the Columbia River. EPA recently listed the Columbia River as one of the seven Great Water Bodies in EPA's 2006-2011 Strategic Plan. For over the last year a multi-agency and stakeholder group has been meeting as a part of EPA's toxics reduction project and working to identify priority gaps in background water quality data regarding toxics concentrations in the Columbia River and its fish and wildlife and information about existing sources of such toxics.

FLOW's monitoring project will focus on filling important toxicity data gaps for the middle Columbia River that have been identified by staff from U.S. EPA and the U.S. Geological Survey. FLOW will utilize the data to help identify and reduce the potential sources of the pollutants and will consult with USGS and EPA staff as a part of this project and if possible work to involve USGS in this project through a cooperative agreement that would take advantage of their matching funds program.

    **1. Organic toxic pollutant monitoring:** The project will gather water quality toxics data on priority organic toxics concentrations at locations along the lower to middle Columbia River where toxics concentrations are suspected to be at elevated levels. The priority toxics that will be tested for include: PCBSs, DDT/DDE, PBDEs, current use pesticides, and a spectrum of endocrine disruptors. As is appropriate for any

ATTACHMENT A

particular testing site, FLOW will aim to test for toxics EPA pollutant schedules for hormone analytes, wastewater compounds, pharmaceuticals, antibiotics and degradates.

Conventional pollutant parameters and key nutrients will also be collected during the collection of toxics samples. Water quality samples will be collected consistent with EPA sampling protocols, analyzed by a state-approved/certified laboratory (Columbia Analytical) and conducted pursuant to a Quality Assurance Plan. Experienced water quality monitoring personnel will collect toxics data at locations along the Columbia River including: Portland, Longview, Vancouver, Troutdale, Hood River, The Dalles and Wenatchee.

2. **Heavy metal toxic pollutant monitoring.** Heavy metals samples for metals including but not limited to mercury, methyl mercury, arsenic, copper, chromium, cadmium, copper, iron, manganese, lead, nick and zinc, will be collected at or near the same sample sites as the organic toxics testing described above.

**Results:** All results will be provided to Washington Department of Ecology and Oregon DEQ, as well as, U.S. EPA and USGS.

**Budget:**
   **Budget:**
   **Revenue:**
      Supplemental Environmental Project funding   $ 12,500
   **Expenses:**
      Water quality collection (boat use, technician time, related expenses)   $ 1,200
      Monitoring equipment   $ 1,100
      Toxics lab analysis, monitoring supplies   $ 6,500
      Project management, planning, reporting, data analysis administrative oversight, coordination with EPA and USGS staff, implementation, administrative costs   $ 3,000
      Development of quality assurance plan, project design review and oversight, monitoring consultant   $ 700

Please do not hesitate to contact me if you have any further questions.

Sincerely,

Daniel R. Serres
Program Coordinator
FLOW